IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FREDRICK GARY LODWICK,

           Plaintiff,

vs.	Case No. 10-1394-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

           Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On March 4, 2009, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 12-19). Plaintiff alleges that he has been disabled since April 21, 2006 (R. at 12). Plaintiff is insured for disability insurance benefits through December 31, 2011 (R. at 14). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since April 21, 2006 (R. at 14). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative changes in the

cervical and lumbar spine, history of Bell's palsy with reduced vision and double vision in the right eye, migraine headaches and diabetes (R. at 14).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14).  After determining plaintiff's RFC (R. at 15), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 17-18).  At step five, the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 18-19).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

**III. Did the ALJ err in his RFC findings by giving substantial weight to the opinions of Dr. Estivo and Dr. Murati, but, without explanation, including only some of the limitations set forth by Dr. Murati in his report?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  "The RFC assessment must always consider and address medical source opinions.  **If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted**" (emphasis added).  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R.

5

§ 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

The ALJ made the following RFC findings:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b), that requires lifting up to 20 pounds occasionally and lifting/carrying up to 10 pounds frequently; standing or walking at least 6 hours in an 8 hour workday with normal breaks and sitting 6 hours in an 8 hour workday with normal breaks. Pushing and/or pulling are limited to 20 pounds occasionally and up to 10 pounds frequently. The claimant could not perform work requiring climbing on ropes, ladders or scaffolds or over the shoulder work. In addition, the claimant should avoid moderate exposure to heights and hazards.

(R. at 15).[1]  In support of his RFC findings, the ALJ stated the following:

> Due to the claimant's cervical and lumbar pain, it is reasonable to conclude that the claimant is limited to lifting up to 20 pounds occasionally and lifting/carrying up to 10 pounds frequently and the same restrictions for pushing and/or pulling. For the same reasons, the evidence supports a finding that the claimant could not perform work requiring climbing on ropes, ladders or scaffolds or over the shoulder work. Although the claimant testified to restricted standing and sitting, no doctor has imposed limits in performing these functions. Thus, the objective evidence supports a finding that

---

[1]The ALJ also included a limitation of no crawling in his hypothetical question to the vocational expert (R. at 39-40).

> the claimant could stand, walk or sit 6 hours in an 8 hour workday with normal breaks. In addition, it is reasonable to conclude that the claimant should avoid moderate exposure to heights and hazards due to his vision problems.
>
> As for the opinion evidence, **substantial weight is given to the opinions of Dr. Estivo (Exhibit 8F/4) and Dr. Murati (Exhibit 12F) as they are well supported and consistent with the longitudinal record**.

(R. at 17, emphasis added).

Dr. Estivo, a treating physician, stated in medical records on June 21, 2007 that plaintiff should have a permanent restriction of limited overhead work (no more than 1/3 of a full work day). Dr. Estivo did not believe that plaintiff required further restrictions (R. at 235). Dr. Murati performed an independent medical examination dated October 23, 2007 (R. at 274-278). He opined that plaintiff should not climb ladders, crawl, or perform work on the right above shoulder level. He limited plaintiff to carrying/lifting/pushing/pulling no more than 35 pounds occasionally and 20 pounds frequently. Finally, Dr. Murati also stated that plaintiff should do no work more than 24 inches from the body on his right side, and should also avoid awkward positions of the neck (R. at 278).

As noted above, the ALJ gave "substantial" weight to the opinions of Dr. Estivo and Dr. Murati. The ALJ stated that he found that their opinions were well supported and consistent with

the longitudinal record.  The ALJ expanded on the restriction set forth by Dr. Estivo by not permitting any over the shoulder work, and also included many of the restrictions set forth by Dr. Murati, and even included some restrictions more severe than those set forth by Dr. Murati (e.g., the ALJ imposed greater lifting and carrying limits than those opined by Dr. Murati).  However, the ALJ did not mention, and, without explanation, did not include the restrictions set forth by Dr. Murati that plaintiff should do no work more than 24 inches from the right side of the body and should avoid awkward positions of the neck.

As noted above, SSR 96-8p requires that if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  In the case of <u>Brown v. Commissioner of Social Security Administration</u>, 245 F. Supp.2d 1175, 1186-1187 (D. Kan. 2003), the ALJ purported to base his RFC findings on a state agency medical assessment.  However, the ALJ's findings were not consistent with many items reflected in the assessment.  The court noted that the ALJ never explained why he made findings inconsistent with the assessment, nor did he even acknowledge that he was rejecting portions of the assessment.  The ALJ failed to explain how inconsistencies in the evidence were considered and resolved.  The court therefore held that the ALJ failed to comply with SSR 96-8p.

In <u>Moore v. Astrue</u>, Case No. 10-1242-SAC (D. Kan. May 18,

8

2011, Doc. 16 at 7-10)), the ALJ, despite "agreeing" with the opinions of Dr. Cohen, did not include in his RFC findings all of the limitations set forth by Dr. Cohen in his mental RFC assessment, or, in the alternative, did not provide an explanation for not including those limitations in his RFC findings.  The court, citing to <u>Brown</u>, held that, despite relying on the opinions of Dr. Cohen when formulating his RFC findings, the ALJ failed to comply with SSR 96-8p because his RFC findings were not fully consistent with or rejected portions of Dr. Cohen's RFC assessment, and no explanation was provided for failing to include all of his limitations.  Similarly, in <u>Hicks v. Astrue</u>, Case No. 10-1046-SAC (March 24, 2011, Doc. 27 at 6-10), the ALJ gave "substantial weight" to the opinions of Dr. Siemsen; however, the ALJ failed to include in his RFC findings a manipulative limitation included in Dr. Siemsen's report, and offered no explanation for not including this limitation in his RFC findings.  Again, the court, citing to <u>Brown</u>, held that, despite relying on the opinions of Dr. Siemsen when formulating his RFC findings, the ALJ failed to comply with SSR 96-8p because his RFC findings were not fully consistent with or rejected portions of Dr. Siemsen's RFC assessment, and no explanation was provided for failing to include all of his limitations.  <u>See</u> <u>also</u> <u>Cowan v. Astrue</u>, Case No. 09-1154-WEB (D. Kan. May 27, 2010, Doc. 19 at 7-10)(the court reversed the decision of the Commissioner

because, despite indicating that he made RFC findings "consistent" with the state agency physicians, the ALJ, without explanation, did not include some of the limitations from the state agency physician's report in his RFC findings); <u>Balderes v. Astrue</u>, Case No. 08-1378-WEB (D. Kan. Nov. 10, 2009, Doc. 24 at 7-11)(the court reversed the decision of the Commissioner because the ALJ, despite "adopting" the opinions of Dr. Adams, failed to provide any explanation for not including in his RFC findings some of the limitations in the report of Dr. Adams); <u>Baker v. Astrue</u>, Case No. 08-1382-MLB (D. Kan. Oct. 9, 2009, Doc. 17 at 7-12)(the court reversed the decision of the Commissioner because the ALJ, despite giving great or substantial weight to the opinions of Dr. Whitten and Dr. Mintz, failed to provide any explanation for not including in his RFC findings some of the limitations in their reports); <u>Valdez v. Astrue</u>, Case No. 08-1260-MLB (D. Kan. Aug. 19, 2009, Doc. 12 at 13-17)(the court reversed the decision of the Commissioner because the ALJ, despite giving substantial weight to the opinions of Dr. Stern, failed to provide any explanation for not including some of Dr. Stern's limitations in his RFC findings, in violation of SSR 96-8p); <u>Smith v. Astrue</u>, Case No. 08-1052-MLB (D. Kan. June 4, 2009, Doc. 20 at 7-13)(the court reversed the decision of the Commissioner because the ALJ, despite "adopting" two medical assessment opinions, made RFC findings which did not match either

assessment; the court held that the ALJ violated SSR 96-8p because the ALJ's RFC assessment conflicted with medical source opinions that he had purportedly adopted, and the ALJ failed to explain why he did not include in his RFC findings all of the restrictions contained in those medical assessments); McLeland v. Astrue, Case No. 07-1233-MLB (D. Kan. Feb. 11, 2009, Doc. 26 at 13-16)(ALJ offered no explanation for not including in RFC findings a moderate limitation from a medical source accorded "substantial" weight by the ALJ; court held the ALJ failed to comply with SSR 96-8p because the ALJ failed to explain why the limitation was not included in the RFC findings).

In the case before the court (Lodwick), as in the many cases cited above, the ALJ asserts that he gave "substantial" weight to the opinions of Dr. Estivo and Dr. Murati. The ALJ further stated that their opinions were "well supported and consistent with the longitudinal record" (R. at 17). However, without explanation, the ALJ did not include some of the limitations contained in Dr. Murati's report. This clearly violates SSR 96-8p, which requires that if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. In the absence of any evidence on this issue, the court cannot speculate on the impact, if any, of these additional limitations on plaintiff's ability to work. For this reason, the case must be remanded in order for the ALJ to

consider these limitations by Dr. Murati, and either include them in his RFC findings, or provide a reasonable explanation for not including them in his RFC findings. Upon remand, the ALJ shall make RFC findings that fully comply with the requirements of SSR 96-8p.

Defendant's brief tries to set forth rationales which might explain why the ALJ did not include some of the limitations in Dr. Murati's report (Doc. 17 at 14-16). However, none of these rationales were in the ALJ decision. The ALJ decision failed to even mention the limitations of Dr. Murati that were not included; furthermore, the ALJ offered no explanation for not including those limitations in his RFC findings. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357

12

F.3d 1140, 1145 (10th Cir. 2004). The ALJ clearly erred by failing to provide any explanation for not including all of the limitations in Dr. Murati's report in his RFC findings. For this reason, the rationales offered for the first time by defendant in their brief will not be considered by the court.

**IV. Did the ALJ err by failing to consider all the evidence when making his RFC findings?**

Plaintiff asserts that the ALJ erred by failing to mention certain evidence before making his RFC findings (Doc. 14 at 4-7). Although the record must demonstrate that the ALJ considered all of the evidence, an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects. Clifton v. Chater, 70 F.3d 1007, 1009-1010 (10th Cir. 1996); see Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008). The court must make sure that the ALJ gave the relevant evidence due consideration. Andersen v. Astrue, 319 Fed. Appx. 712, 721 (10th Cir. Apr. 3, 2009). The court finds no clear error by the ALJ simply because he failed to mention each piece of evidence cited by plaintiff in his brief. In making his RFC findings, the ALJ indicated he gave substantial weight to the medical opinions of Dr. Estivo and Dr. Murati. The ALJ's error, as noted above, was

to fail to include, without any explanation, some of the limitations contained in Dr. Murati's report.

**V. Did the ALJ err in his credibility analysis?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It

is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

On remand, the ALJ will need to make new credibility findings after considering the limitations in Dr. Murati's report which were not mentioned by the ALJ or included in the RFC findings.  However, the court finds no clear error by the ALJ in his credibility analysis as set forth in the first full paragraph at R. at 17.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 13th day of December 2011, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge